## El Pueblo *v.* Vilar.

Apelación procedente de la Corte de Distrito de Humacao.

No. 375.—Resuelto en noviembre 3, 1911.

Derecho Penal—Publicación de Escritos Indecentes—Elementos Esenciales del Delito.—En una acusación fundada en una infracción del artículo 283 del Código Penal sólo es necesario probar que el acusado voluntaria y lascivamente publicó, vendió y distribuyó los artículos obscenos objeto de la acusación, y examinada la prueba en el caso de autos, el Tribunal Supremo resolvió que tales requisitos quedaron probados en este caso fuera de toda duda razonable.

Id.—Prueba Circunstancial—Duda Razonable.—Una duda razonable no es una idea o concepción vaga o caprichosa, sino la duda que hace detener a un hombre de sentido común ordinario antes de resolver una cuestión de importancia que se le presente y le afecte directamente.

Id.—Interpretación de Ley—Ejecución del Acto Voluntaria y Lascivamente.—Nuestra Legislatura al usar la palabra ''lascivamente'' en el artículo 283 del Código Penal claramente las ha empleado en el mismo sentido y con intención parecida que el Congreso de los Estados Unidos en el precepto legal que prohibe enviar por correo todo escrito que tienda a diseminar la inmoralidad en forma alguna en el pueblo y dicha palabra debe interpretarse en su significado corriente y ordinario.

Id.—Ejecución Voluntaria del Acto—Presunción.—Interpretando la significación de la palabra ''voluntariamente'' repetidas veces se ha resuelto que cuando se ha ejecutado un acto ilegal y no hay prueba que demuestre que ha sido el resultado de accidente o descuido, la presunción es que el acto fué ejecutado voluntariamente.

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. Rafael López Landrón.*

Abogado del apelado: *Sr. Jesús M. Rossy, Fiscal.*

EL JUEZ ASOCIADO SR. MacLEARY, emitió la opinión del tribunal.

En el presente caso se formuló acusación contra Juan Vilar por infracción del artículo 283 del Código Penal. Ese artículo es como sigue:

"Toda persona que voluntaria y lascivamente:

"3. Escribiere, compusiere, estereotipare, imprimiere, publicare, vendiere, distribuyere, tuviere a la venta o exhibiere cualquier escrito, papel o libro obsceno o indecente; o diseñare, copiare, dibujare, grabare, pintare o de cualquier otro modo preparare algún cuadro o estampa obsceno o indecente; o amoldare, cincelare, fundiere, o de cualquier otro modo hiciere alguna figura obscena o indecente, será reo de un delito menos grave."

Se alega en la acusación que el acusado voluntaria y lascivamente ordenó imprimir, publicar y distribuir un periódico titulado "Voz Humana," copia del cual se hizo parte de dicha acusación, de cuyo periódico era director o editor el expresado acusado Juan Vilar, habiendo insertado en el mismo un editorial groseramente obsceno e indecente con el epígrafe "Horrendo Crimen. Violación y corrupción de una niña de siete años," insertándose en la indicada acusación un extracto del editorial, y alegándose además que en dicho periódico apareció otro editorial con el título de "El triunfo de la carne," del que se citaban párrafos con alguna extensión. Los extractos del editorial son demasiado indecentes para transcribirlos en esta opinión.

Celebrado el juicio, el acusado fué declarado culpable del delito que se le imputó, y en 29 de mayo, fué condenado a sufrir dos años de prisión en la cárcel y al pago de las costas procesales. Contra esta sentencia interpuso el acusado recurso de apelación para ante este tribunal, quedando en libertad por haber prestado fianza de quinientos dollars. Aparece en los autos una relación del caso, habiendo el acusado estado representado por abogado en el acto de la vista y El Pueblo

por su Fiscal, quedando el caso debidamente sometido por los alegatos.

No se tomó ninguna excepción al cargo que se expresa en la acusación de que el acusado *ordenó* la realización de tales actos, sin duda por el fundamento de que "*Qui facit per alium facit per se.*" El abogado del acusado sostiene su caso en las siguientes proposiciones:

1ª. Que no hay prueba concluyente de la participación del acusado en haber ordenado imprimir, publicar y distribuir los artículos denunciados.

2ª. Que no se ha demostrado que hayan concurrido los requisitos esenciales que exige el artículo 283 del Código Penal.

3ª. Que examinados los artículos denunciados en la acusación, ya en su sentido puramente literal, o en su significado íntimo, no constituyen materia inmoral de los calificados como delictuosos en el Código Penal.

Una consideración razonable de este caso hace necesario un cambio en estas proposiciones; por tanto, las consideraremos inversamente, empezando por la tercera y última.

*Primera.* De una simple lectura de los artículos expresados en los autos se verá que son obscenos e indecentes, siendo esto solamente lo que la ley exige. No es necesario hacer un examen riguroso de lo que constituye obscenidad e indecencia. El sentido común y la propia educación conducen inmediatamente al entendimiento a formar juicio sobre estas materias. Ninguna persona cándida, con instintos regulares, podrá leer estos artículos y compararlos con el artículo 283 del Código Penal sin vacilar en decir que la ley tuvo por objeto comprender tales publicaciones.

*Segunda.* ¿Cuáles son los elementos esenciales del artículo 283 del Código Penal que necesitan probarse? Lo único que hay que probar es que el acusado voluntaria y lascivamente publicó, vendió y distribuyó los artículos referidos en la acusación. Varios testigos declaran que Vilar era el editor de "Voz Humana," donde aparecieron esos artículos; que en-

tregó el borrador al impresor para su inserción; que pagó por la impresión de la edición del día 12 de diciembre en la que se incluyeron estos artículos; que puso el periódico en el correo para su distribución; que envió veinte y cinco ejemplares a Arecibo para ser vendidos y recibió el dinero de la venta de los mismos.

Cierto es que la prueba de algunos de estos hechos ha de obtenerse de las declaraciones de los diferentes testigos, pero al considerarse la prueba toda en conjunto, no deja ella duda alguna en la mente de una persona razonable de la existencia de tales hechos, así como de que los mismos aparecen de modo suficiente de la prueba. No es necesario presentar testigos oculares de cada hecho constitutivo del delito imputado en la acusación. Es suficiente con que los mismos aparezcan de toda la prueba, directa o circunstancial, fuera de duda razonable.

Una duda razonable no es una idea o concepción vaga y caprichosa, sino la duda que hace detener a un hombre de sentido común ordinario antes de resolver una cuestión de importancia que se le presente y le afecte directamente. Ha sido bien definida como sigue:

"Una duda razonable es una duda fundada en la razón, y que es razonable en vista de toda la prueba; y si después de una consideración o examen imparcial de toda la prueba puede el jurado ingenuamente expresar que no está de acuerdo con la culpabilidad del acusado, tiene éste entonces una duda razonable. Pero si después de tal examen o consideración de toda la prueba puede el jurado ciertamente expresar que tiene una firme convicción de la culpabilidad del acusado igual a la que le obligaría a actuar en asuntos de mayor importancia relacionados con su propio negocio, entonces no existe en él la duda razonable."

*United States* v. *Lewis,* 111 Fed. Rep., 636. Véanse también los casos de *Tomkins* v. *Butterfield,* 25 Fed. Rep., 558; *United States* v. *Graves,* 53 Fed. Rep., 636; *State* v. *Millain,* 3 Nev., 409; *People* v. *Stott,* 4 N. Y. Cr. Rep., 306; *State* v. *James,* 37 Conn., 355; *Brown* v. *State,* 42 Atl. Rep., 811;

*State* v. *Zdanowicz,* 55 Atl. Rep., 743; *United States* v. *Dexter,* 154 Fed. Rep., 890; *Greene* v. *United States,* 154 Fed. Rep., 401; *United States* v. *Richards,* 149 Fed. Rep., 443; *Brown* v. *United States,* 145 Fed. Rep., 1.

Aplicando esta regla a los hechos de este caso no puede haber lugar a discutir la proposición de que los elementos esenciales del delito señalados en el estatuto han sido probados fuera de duda razonable.

*Tercera.* No puede haber vacilación alguna en declarar según toda la prueba que ha sido presentada, que el acusado y no otra persona, es el autor de la publicación y que vendió y distribuyó dicha publicación. El objeto de la defensa formulada a favor del acusado, es que él no ejecutó los actos *voluntaria y lascivamente,* según los términos del Código Penal. Se necesita algo más que disertaciones filosóficas con respecto al alcance de este estatuto penal para exonerar a un acusado a quien se le imputa la infracción del mismo. "Lascivamente," significa de modo disoluto, sensual, no casto, impuro, ó lascivo. La palabra "lascivo" ha sido definida en el sentido de significar tener una tendencia a excitar pensamientos lujuriosos, en el estatuto que define la clase de correspondencia que no puede enviarse por correo. (Est. Rev., art. 3893, según ha sido enmendado por la ley de julio 12, 1876.) Al usar el Congreso los términos "obsceno," "indecente," "lewd" y "lascivo," solamente tuvo presente el significado corriente de estas palabras, y al emplear estas palabras corrientes y claras quiso significar que no circularía por correo nada que tendiera a diseminar inmoralidad en ninguna forma en el pueblo. (*United States* v. *Britton,* 17 Fed. Rep., 731.) Nuestra legislatura claramente usó las palabras en el mismo sentido y con intención parecida. Por supuesto que el adverbio tiene una significación correspondiente a la del adjetivo. Que un hombre y una mujer lujuriosa y lascivamente se asociaron se ha declarado en una acusación por adulterio en la que se alega que se unieron ilegalmente, y vivieron y cohabitaron juntos, cometiendo así el delito de adulterio. (Véanse

los casos de *State* v. *Stubbs,* 13 S. E., 90; 108 N. C., 774; *Luster* v. *State,* 2 South. Rep., 690, 691; 23 Fla., 339; *Pinson* v. *State,* 28 Fla., 735; 9 South. Rep., 706, 707; *Thomas* v. *State,* 39 Fla., 437; 22 South. Rep., 725, 726; *Penton* v. *State,* 28 South. Rep., 774, 775; 42 Fla., 560.) Difícil es concebir en qué otra forma que no fuera lujuriosamente pudieron haberse escrito, publicado y distribuído estos artículos. Su publicación seguramente no podía favorecer ningún fin moral, casto o puro. El público a quien ellos iban dirigidos por el acusado no tiene facultad para corregir ninguna acción indebida que en ellos se describa o a que se haga referencia. La causa de la verdad y de la justicia nada se benefician con tales medios o discusiones. Los impulsos propios no inspiran publicaciones como las que en ésta se denuncian. Desde luego que no podemos penetrar en las intimidades del corazón humano y expresar cuáles fueron los verdaderos motivos que allí existían y que dieron origen a estas publicaciones. Solamente podemos juzgar un árbol por sus frutos. (Matthew VII, 16.) Con respecto a la palabra "voluntariamente" repetidas veces se ha declarado que cuando se ha realizado un acto ilegal y falta prueba que muestre accidente o descuido, debe presumirse que fué ejecutado voluntariamente. Black, en su Diccionario de Leyes, página 7242, define el adjetivo *voluntario* "como procedente de un impulso consciente de la voluntad; buscando el resultado que efectivamente sucede; pensado, intencional, malicioso." Esta definición ha sido aprobada por la Corte Suprema de California en el caso de *Parsons* v. *Smile,* 97 Cal., 655. La palabra "voluntariamente" tiene una significación parecida cuando modifica a un verbo. No hay nada que muestre que el acto imputado en la acusación formulada contra Vilar se ejecutase en ninguna otra forma que no fuera voluntariamente, y debe presumirse que él actuó voluntariamente en los actos denunciados en este procedimiento.

Todos los elementos del delito y la participación de culpabilidad que el acusado tuvo en el mismo como autor, así como la infracción de la letra y espíritu del estatuto, aparecen de

modo suficiente de la prueba fuera de toda duda razonable. Por tanto, las defensas propuestas a favor del acusado no pueden servir para relevarlo del castigo.

Pudiera suponerse que dos años de prisión es un castigo severo por el delito menos grave de que fué declarado culpable el acusado. El artículo 283 del Código Penal no señala el castigo que ha de imponerse por este delito. Simplemente expresa que la infracción del estatuto constituye un delito menos grave. Pero el castigo está señalado en el artículo 16 del propio código que es como sigue:

"Excepto en los casos en que se prescriba otra pena por este Código, toda delincuencia declarada *misdemeanor* apareja pena de cárcel por un término máximo de dos años, o multa máxima de doscientos cincuenta dollars o ambas penas."

El juez sentenciador le impuso el término máximo de la prisión que la ley señala, pero omitió la multa. Las costas necesariamente van incluídas en la sentencia condenatoria. (Leyes de 1911, página 71, Ley No. 11.)

Aunque como regla general esta Corte Suprema no trata de modificar el castigo impuesto por el tribunal sentenciador, sin embargo creemos que en el presente caso un año de prisión, en la cárcel de distrito es suficiente por el delito cometido por el acusado. No encontramos que se haya cometido error en la sentencia dictada; hecha la modificación indicada, debe dicha sentencia ser confirmada.

*Resuelto de conformidad.*

Jueces concurrentes: Sres. Asociados Wolf, del Toro y Aldrey.

El Juez Presidente Sr. Hernández, no tomó parte en la resolución de este caso.