EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* JESÚS RODRÍGUEZ COLÓN, acusado y apelante.

*Número:* CR-67-73          *Resuelto:* 18 de diciembre de 1967

*Santos P. Amadeo, Francisco Coll Moya* y *Gustavo Marrero
Ledesma,* abogados del apelante; *J. B. Fernández Badillo,
Procurador General,* y *Peter Ortiz, Procurador General Au-
xiliar,* abogados de El Pueblo.

PER CURIAM: El apelante fue convicto por un jurado
del delito de Asesinato en Primer Grado y sentenciado a
reclusión perpetua.

Imputa al tribunal sentenciador haber cometido error 1)
al no definir adecuadamente al jurado sobre lo que significaba
la duda razonable, 2) al admitir en evidencia dos fotogra-
fías de la víctima, y 3) "[L]as frases de la acusación en
que se imputa al acusado *de tener un corazón pervertido y
maligno* le privó a éste del derecho a un juicio imparcial y
violó las garantías constitucionales de la presunción de ino-
cencia y la duda razonable."

Los hechos, según los resume correctamente el Procurador
General en su Informe, son los siguientes:—

"Jesús Rodríguez Colón era un celador de carros en La
Marina de San Juan. El primero de mayo de 1962 estaba guiando
un carro por los barrios del pueblo de Cataño. Alrededor de las
diez y media de la noche, invitó a pasear en el carro a Domingo
Hernández Apellaniz de nueve años, el menor José Antonio Gil,
C/P Cara Sucia, Genaro Otero Reyes, Blas Martínez y un
individuo conocido por El Ciego; y se dirigieron hacia la playa
de Punta Salinas. Genaro y Blas se apearon en Bay View al ente-
rarse mediante afirmaciones de Rodríguez Colón, alias Pisisi, que
el carro era robado. Los demás viajeros siguieron hasta llegar a la
playa de Punta Salinas. Pisisi dijo que iban a pescar y se dirigió

a la playa junto al niño Domingo. El Ciego se quedó en el carro y Cara Sucia iba detrás.

Al llegar abajo, el acusado agarró a Domingo por la camisa; al éste tratar de hacer fuerza, Pisisi le dio con una llave de perro. El nene no pudo gritar porque antes el acusado le había puesto un tapón en la boca. Al caer el niño, el acusado le bajó los pantalones, se abrió su braqueta y se le trepó encima por veinte minutos. Una vez consumado el acto, Jesús Rodríguez Colón arrastró al niño hasta la playa, se metió al agua y lo empujó hacia la mar con una bambua, dejándolo allí abandonado. Al otro día apareció el cadáver del niño de nueve años ahogado." (Informe del Procurador General, págs. 1 y 2.)

La causa de la muerte fue asfixia por sumersión.

Al discutir el primer error el apelante, luego de citar porciones de las instrucciones sobre duda razonable, arguye que dichas instrucciones son contrarias y confusas y que pudieran inducir al jurado a cometer error al determinar la culpabilidad del acusado. El juez instruyó al jurado en la siguiente forma:

"Todo acusado en un procedimiento criminal se presume inocente. Esta presunción de inocente lo cobija a lo largo de todo el proceso y aún a lo largo de vuestras deliberaciones. Esto quiere decir, y trae como consecuencia que ustedes únicamente pueden declararlo culpable en un caso cuando se entiende que la prueba ha establecido su caso, el caso en contra del acusado, más allá de duda razonable. De modo que el Jurado en sus deliberaciones tiene que partir de la premisa de que el acusado es inocente y entonces ver luego de un estudio ponderado de la prueba si se convencen más allá de duda razonable que el acusado es culpable de los delitos que se le imputan en la acusación, y si no hay un convencimiento de eso, debe el Jurado traer un fallo absolutorio. En otras palabras, la ley manda a absolver si hay duda razonable respecto a la culpabilidad del acusado en relación con la comisión de cualquier delito.

Duda razonable no es cualquier duda imaginaria. No es la duda que puede aducir un temperamento que no sea a través de una deliberación en un caso, lo que entiende la ley como duda razonable que debe producir la duda que justifique la absolución, únicamente el estado de la mente de un juzgador de moderado

valor, conciente, que busca la verdad en la evidencia, la estudia detenidamente, considera y pesa todas las instrucciones de derecho del juez, pertinentes al caso y que luego de ese proceso, todavía no se encuentra dentro de sí, con una suficiente certeza moral respecto a la culpabilidad del acusado, ese es el caso que la ley manda a absolver por duda razonable. El Fiscal tiene que probar su caso más allá de duda razonable, pero no le exige probar un caso fuera de toda duda posible, porque esta situación no se puede lograr dentro de la realidad, no se puede probar un caso fuera de toda posible. La ley lo que requiere es que se establezca la culpabilidad del acusado más allá de duda razonable, si existe duda razonable, se debe absolver.

Ya les he dicho que si hay duda respecto a la culpabilidad del acusado, esto debe producir una absolución, ahora bien, si la duda del juzgador radica en cuanto a si el acusado cometió el delito de mayor grado y el delito de menor grado, si es en eso, entonces la ley manda a fallar por la convicción por el delito menos grave. La ley dice que si hay duda, que si la duda radica en que si el acusado cometió el delito de mayor gravedad o el de menor gravedad, y en eso es que estriba, entonces es que debe fallar por el delito de menor gravedad. Ahora, si la duda es sobre su culpabilidad en general, en ese caso la ley manda a absolver. Si la duda radica si cometió el delito de mayor gravedad o de menor gravedad, entonces la ley manda a fallar por el delito menos grave." (Instrucciones, págs. 12 a 14.)

■ Estas instrucciones se ajustan sustancialmente a las que hemos sancionado en los casos de *Pueblo* v. *Vilar*, 17 D.P.R. 1054, 1057 (1911); *Pueblo* v. *Cancel*, 13 D.P.R. 178, 188–189 (1907); *Pueblo* v. *Dones*, 9 D.P.R. 469, 478 (1905).

■ El fiscal ofreció y el tribunal admitió en evidencia dos fotografías del cadáver del niño Domingo Hernández, tomadas al día siguiente en el sitio de los hechos. Las fotografías demostraban la presencia de un chichón en la frente del niño asesinado. Aunque la defensa objetó la admisión de las fotografías, no formuló reparos a la autenticidad de lo que las mismas representaban. Si se considera que un testigo de cargo declaró que el acusado dio un golpe al niño en la frente con una llave, las fotografías tendían a corroborar

ese extremo del testimonio de dicho testigo, y no fueron presentadas, como alega el apelante, para impresionar al jurado e influenciarlo en su contra. Véase, sin embargo, *Pueblo* v. *Rivera Romero*, 83 D.P.R. 471, 483 (1961) y además *Pueblo* v. *Pacheco Stevenson*, 83 D.P.R. 842 (1961); *Pueblo* v. *Torres*, 75 D.P.R. 231 (1953); *Pueblo* v. *Rivera*, 69 D.P.R. 538 (1949); *Pueblo* v. *Zayas Ortiz*, 65 D.P.R. 538 (1946). El error no fue cometido.

Tampoco se cometió el tercer y último error.

█ La frase "tener un corazón pervertido y maligno" usada en la acusación no privó al acusado-apelante de su derecho a un juicio imparcial ni violó sus garantías constitucionales de la presunción de inocencia y la duda razonable.

Aunque no se hubiera usado esa frase en la acusación era deber del juez al instruir al jurado sobre la premeditación, ya que se trataba de un delito de asesinato en primer grado, que la premeditación puede ser expresa o tácita y que es tácita, cuando no resulta notable provocación, o las circunstancias que concurren a la muerte *demuestran* un *corazón pervertido y maligno*. Art. 200 del Código Penal, 33 L.P.R.A. sec. 632.

Respecto a la duda razonable el juez dijo al jurado en sus instrucciones: "Todo acusado en un procedimiento criminal se presume inocente. Esta presunción de inocente lo cobija a lo largo de todo el proceso y aun a lo largo de vuestras deliberaciones." La frase impugnada es sólo una alegación sujeta a ser probada por el fiscal al igual que las demás alegaciones de la acusación.

*No habiéndose cometido ninguno de los errores señalados se confirmará la sentencia apelada.*

El Juez Asociado Señor Belaval no intervino.