Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel Especial

| | | |
|---|---|---|
| AGENTE ROBERTO L. GERENA BETANCOURT #5330 <br> Recurrido <br><br> v. <br><br> NEGOCIADO DE LA POLICÍA DE PUERTO RICO <br> Recurrente | KLRA202400146 | *Revisión Judicial* procedente de la Comisión de Investigación, Procesamiento y Apelación <br><br> Caso Núm. <br> 21 P 125 <br><br> Sobre: <br> Expulsión |

Panel integrado por su presidente, el Juez Rivera Torres[1], el Juez Adames Soto y la Juez Aldebol Mora

Adames Soto, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 23 de julio de 2025.

Comparece el Negociado de la Policía de Puerto Rico (NPPR o parte recurrente), mediante recurso de *revisión judicial*, solicitando que revoquemos una *Resolución* emitida por la Comisión de Investigación, Procesamiento y Apelación (CIPA o agencia recurrida). En su determinación, la CIPA declaró *Ha Lugar* la *Apelación* presentada por el Agente Roberto L. Gerena Betancourt (Agte. Gerena Betancourt, o el recurrido), contra el dictamen del NPPR de despedirlo por presunta violencia doméstica. Al así decidir, la CIPA dejó sin efecto la medida disciplinaria de expulsión impuesta por el NPPR al Agte. Gerena Betancourt, ordenando, además, que se le pagaran los salarios, haberes y beneficios dejados de percibir durante el término en que permaneció destituido de su puesto.

---

[1] Mediante Orden Administrativa OATA-2025-070 se designó al Hon. Waldemar Rivera Torres como integrante de este Panel, debido a que el Hon. Abelardo Bermúdez Torres dejó de ejercer funciones como Juez del Tribunal de Apelaciones el 6 de mayo de 2025.

NÚMERO IDENTIFICADOR

SEN2025_____

Tras evaluar los asuntos ante nuestra consideración, hemos decidido *Confirmar* la *Resolución* recurrida.

## I. Resumen del tracto procesal

El entonces Comisionado del NPPR, (el Comisionado), le envió al Agte. Gerena Betancourt una *Notificación de Suspensión Sumaria de Empleo y Sueldo y Resolución de Cargos*[2]*,* por presuntamente haber cometido actos de violencia doméstica contra su pareja, la también agente de la Policía, Agte. Aracelis Santana Ramos, (Agte. Santana Ramos), su compañera consensual. Como fundamentos legales para tal acción disciplinaria el Comisionado le imputó las siguientes infracciones:

> Artículo 23 de la Ley Núm. 53-1996, según enmendada, conocida como "Ley de la Policía de Puerto Rico", (vigente al momento de los hechos).
>
> Artículo 14, Sección 14.5, del Reglamento Núm. 4216 del 11 de mayo de 1990 conocido como el "Reglamento de Personal de la Policía de Puerto Rico, Falta Grave Núm. 27, "observar una conducta lesiva, inmoral o desordenada en detrimento del Cuerpo de la Policía".
>
> Artículo 14, Sección 14.6.1, del Reglamento Núm. 9001 del 29 de agosto de 2017 conocido como el "Reglamento para enmendar el Artículo 14 del Reglamento de personal de la Policía de Puerto Rico", Faltas Graves 29 y 32, "incurrir en conducta lesiva, inmoral o desordenada en detrimento del cuerpo de la Policía" e "incurrir en actos constitutivos de la Ley Núm. 54 del 15 de agosto de 1989, según enmendada, ley de la Violencia Doméstica. La investigación administrativa no dependerá de los resultados del caso criminal".
>
> Artículo 5, Sección 5.2, del Reglamento Núm. 4216 del 11 de mayo de 1990 conocido como el "Reglamento de Personal de la Policía de Puerto Rico:
> Inciso 1: Proteger la vida y propiedad, impedir el crimen y el desorden.
> Inciso 2: Prevenir, descubrir y perseguir el delito.
> Inciso 3: Cumplir y velar por el cumplimiento de las leyes, reglamentos y ordenanzas municipales.
> Inciso 4: Observar y procurar la protección de los derechos civiles del ciudadano.
> Inciso 5: Observar en todo momento una conducta ejemplar.[3]

---

[2] Anejo I del apéndice del recurso de *revisión judicial,* pág. 4.
[3] Véase Anejo XVI del apéndice del recurso de *revisión judicial,* págs. 70-72.

En consonancia, el Comisionado le informó al Agte. Gerena Betancourt que se proponía expulsarlo del puesto que ocupaba en el Negociado de la Policía, para lo cual lo citó para una vista informal administrativa.

Una vez fue celebrada la vista informal, esta tuvo como resultado que el Comisionado emitiera una *Resolución Final de Expulsión* en contra del Agte. Gerena Betancourt. Tal como anticipa el título de dicha *Resolución,* a través de dicha misiva el recurrente fue notificado de su expulsión de la Policía, además de apercibírsele de su derecho de apelar ante la CIPA.

En efecto, el Agte. Gerena Betancourt presentó una oportuna *Apelación* ante la CIPA. Arguyó en su recurso que no estaba de acuerdo con la sanción que se le había impuesto, pues: no estuvo basada en la prueba que obraba en el récord administrativo; había ausencia de prueba robusta y convincente para establecer los hechos que se le imputaron y; contaba con prueba de carácter exculpatorio.

A raíz de ello, la CIPA citó a las partes para celebrar una vista administrativa formal en su fondo. Superados varios asuntos procesales, no pertinentes al recurso ante nosotros, dicha vista fue celebrada el 2 de mayo de 2023.

A la vista administrativa comparecieron las partes, junto a sus respectivos representantes legales. Por su parte, el NPPR presentó evidencia testifical y documental para sostener su determinación de sancionar al recurrido. En cuanto a la prueba testifical presentada por esta parte, sentó a declarar a los siguientes testigos: el Sgto. Rodríguez Villafañe, de la Unidad Patrullas de Carretera de Humacao; la Agte. Concepción Figueroa Soto, de la División de Violencia Doméstica y; la Agte. Santana Ramos, pareja consensual del recurrido. Por parte del Agte.

Gerena Betancourt se decidió no presentar evidencia testifical, limitándose a contrainterrogar a los testigos del NPPR.

Una vez el NPPR concluyó la presentación de su prueba, y habiéndosele concedido al recurrido amplia oportunidad para contrainterrogarla, la CIPA emitió la *Resolución* cuya revocación nos solicita el primero, declarando *Ha Lugar* la *Apelación* presentada por el señor Gerena Betancourt. Como parte de la referida *Resolución*, la CIPA enumeró las siguientes determinaciones de hechos:

1. EL APELANTE ocupaba el puesto de Agente dentro del negociado de la Policía de Puerto Rico.

2. EL APELANTE y la señora Aracelys Santana Ramos, también agente del orden público, sostuvieron una relación de convivencia entre los años 2013 a 2018.

3. Que para la fecha del 11 de septiembre de 2018, el APELANTE envió un mensaje de texto al celular de la señora Santana donde le solicitaba que abandonara la residencia donde cohabitaban, propiedad del APELANTE, además de dar por terminada su relación. Dicho mensaje no contenía lenguaje grosero, hostil, ni soez.

4. Que al recibir el referido mensaje, la señora Santana, quien en ese momento se encontraba trabajando como retén en su unidad de trabajo, acudió llorosa a donde su supervisor, el sargento David Rodríguez y le cuenta lo sucedido.

5. Que a raíz del relato de la señora Santana, el caso fue referido a la División de Violencia Doméstica.

6. Que ese mismo día, 11 de septiembre de 2018, se radicó DENUNCIA en contra del Agente Gerena Betancourt, querella Número 2018-04-036-06685, bajo el Artículo 3.1 de la Ley Número 54 de 1989, según enmendada. De la denuncia se desprende que los hechos fueron los siguientes: "Consistente en que el aquí imputado, mediante mensaje de texto, le manifestó a la perjudicada se fuera de la casa, que no quería verla. Formando un patrón de conducta consistente de maltrato hacia la perjudicada." Cabe señalar que en dicha denuncia, de ninguna forma o manera, se hace mención o alusión a maltrato físico, agresión o patrón alguno.

7. Que la determinación del Honorable Juez Pietri Núñez del Tribunal de Primera Instancia de Humacao fue de NO CAUSA.

8. Que posteriormente, el 8 de noviembre de 2018, en una Vista en Alzada celebrada en el Tribunal de Fajardo, en la cual el APELANTE ni fue notificado ni estuvo presente, se determinó CAUSA en Ausencia.

9. Que perfeccionado el trámite en la esfera criminal, en el Tribunal de Fajardo la determinación fue de NO CULPABLE.

10. Que para la fecha del 28 de mayo de 2021, el APELANTE fue expulsado de la Policía de Puerto Rico.[4]

Entonces, luego de calibrar y asignar valor probatorio a la prueba testifical desfilada ante su presencia, el foro recurrido concluyó que la parte que tenía el peso de la prueba para justificar la expulsión del recurrido, el NPPR, no había logrado presentar prueba clara, robusta y convincente para tal propósito, por lo que no se podía concluir que el recurrido hubiese cometido las faltas que se le imputaron. Por tanto, como dijimos, la CIPA revocó la medida disciplinaria impuesta al recurrido, y ordenó los remedios correspondientes a tal decisión.

En desacuerdo, el NPPR, representado por la Oficina del Procurador General, (el Procurador), presentó una oportuna *Moción de Reconsideración* ante la CIPA. Al no ser considerada la moción aludida por la CIPA, el NPPR decidió acudir ante nosotros mediante el recurso de *revisión judicial* ante nuestra atención, alzando los siguientes señalamientos de error:

> Erró la CIPA al declarar "Ha Lugar" la Apelación presentada por el Agte. Gerena Betancourt a pesar de que la prueba presentada por el Negociado de la Policía demostró la comisión de las faltas impuestas a este y justifican la medida disciplinaria impuesta por el Comisionado del Negociado de la Policía.

> En la alternativa, erró la CIPA al aplicar rigurosamente las Reglas de Evidencia en la vista adjudicativa y denegar la presentación de unas fotos que ilustraban los golpes de la perjudicada por razón de que un testigo del NPPR no pudo estar presente en la vista por problemas de salud y a pesar de que el NPPR propuso que fuera citado posteriormente e intentó autenticar las fotografías con la propia perjudicada.

Más adelante, el Procurador presentó la *Transcripción de Oficial de la Vista Administrativa*, (TPO), junto al *Alegato Suplementario* correspondiente.

En respuesta, el señor Gerena Betancourt instó *Réplica en oposición a revisión administrativa.*

---

[4] Anejo XIV-A del apéndice del recurso de *revisión judicial*, pág. 53-54.

KLRA202400146

## II. Exposición de Derecho

a.

La Ley Núm. 32 de 22 de mayo de 1972, conocida la "Ley de la Comisión de Investigación, Procesamiento y Apelación (CIPA)" (Ley Núm. 32), creó dicha comisión como foro apelativo administrativo para intervenir en los casos en que se impute mal uso o abuso de autoridad a cualquier funcionario del orden público estatal o municipal, agente de rentas internas o cualquier otro funcionario de la Rama Ejecutiva autorizado a realizar arrestos. 1 LPRA sec. 171 *et seq. González y otros v. Adm. de Corrección*, 175 DPR 598, 607 (2009); *Calderón Morales v. Adm. Corrección*, 175 DPR 1033, 1036 (2009).

El Artículo 2 de la Ley Núm. 32 establece que la CIPA tendrá entre sus funciones, actuar como foro apelativo con jurisdicción exclusiva para oír y resolver apelaciones interpuestas por los funcionarios públicos cubiertos por la ley, cuando el jefe o director del organismo o dependencia de que se trata le haya impuesto cualquier medida disciplinaria relacionada con actuaciones cubiertas por la ley, o con faltas leves en que se haya impuesto una reprimenda o suspensión de empleo y sueldo, o faltas graves en el caso de miembros de la policía estatal o municipal o de otras agencias que tengan reglamentación similar. 1 LPRA sec. 172.

Además, la Ley Núm. 32 faculta a la CIPA para recibir prueba en el desempeño de su función apelativa, como parte del proceso administrativo disciplinario iniciado en la Policía o ante cualquier otra agencia de la Rama Ejecutiva cuyos funcionarios estén autorizados a realizar arrestos. 1 LPRA secs. 173-176. Esto quiere decir que la CIPA examinará la determinación que se trae ante su consideración, no solo a base de la prueba vertida en la vista informal celebrada por la agencia concernida, sino de la prueba que se presente en la etapa apelativa. Por ello, se ha reconocido que la vista ante la CIPA es una especie de juicio *de novo* en el que la Comisión

tiene la oportunidad de escuchar nuevamente toda la prueba presentada ante la autoridad administrativa contra la que se recurre, o recibir otra prueba distinta, y otorgarle el valor probatorio que a su juicio merezca. La vista que se celebra ante la CIPA "es propiamente una vista formal, porque en ella se ventilan de manera definitiva, a nivel administrativo, todos los derechos del empleado [y en] este sentido es equivalente a un juicio en sus méritos". *Ramírez v. Policía de P. R.*, 158 DPR 320, 334 (2002).

b.

La Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), Ley Núm. 38-2017, según enmendada, 3 LPRA sec. 9601 *et seq.*, dispone sobre el alcance de la revisión judicial de las determinaciones de las agencias. Tanto la referida ley, como la jurisprudencia aplicable, establecen que la función revisora de las decisiones administrativas concedida a los tribunales apelativos consiste esencialmente en determinar si la actuación de la agencia fue dictada dentro de las facultades que le fueron conferidas por ley y si la misma es legal y razonable. *T-JAC, Inc. v. Caguas Centrum Limited*, 148 DPR 70, 80 (1999). De ello se deriva que, al momento de revisar las determinaciones administrativas, los tribunales apelativos estamos obligados a conceder deferencia a las decisiones de las agencias y el conocimiento especializado sobre los asuntos que se les han delegado. *Katiria's Café, Inc. v. Mun. de San Juan*, 2025 TSPR 33.

Por lo anterior, nuestro Tribunal Supremo ha considerado **la razonabilidad de la acción impugnada** como criterio rector al revisar una actuación de la agencia recurrida. *Torres Rivera v. Policía de P.R.*, 196 DPR 606, 626 (2016). Conforme a lo cual, habrá que determinar si la actuación de la agencia fue arbitraria, ilegal, caprichosa o tan irrazonable que constituyó un abuso de discreción. *Mun. De San Juan v. CRIM*, 178 DPR 164, 175 (2010).

Sobre el alcance de la labor revisora del Tribunal de Apelaciones al considerar **las determinaciones de hechos** efectuadas por el foro administrativo en particular, el Art. 4.5 de la LPAU expresamente dispone que estas *serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo.* 3 LPRA sec. 9675. Por tanto, la revisión judicial de una determinación administrativa se circunscribe a determinar si: (1) el remedio concedido por la agencia fue apropiado; (2) **las determinaciones de hechos realizadas por la agencia están sostenidas por *evidencia sustancial* que obra en el expediente administrativo**: y (3) si las conclusiones de derecho del ente administrativo fueron correctas, ello mediante una revisión completa y absoluta. (Énfasis provisto). *Torres Rivera v. Policía de PR*, supra, págs. 626-627.

*Evidencia sustancial* es aquella que una mente razonable aceptaría como adecuada para sostener una conclusión. *Otero v. Toyota*, 163 DPR 716, 728 (2005). Quiere decir que, la persona que impugne las determinaciones de hechos de una agencia deberá convencer al tribunal de que la evidencia en la cual se apoyó esta no sostiene tales determinaciones. *Íd.* En la medida que la parte afectada no demuestre la existencia de esa otra prueba que sostenga que las determinaciones no se apoyan en evidencia sustancial o que menoscabe el valor de la evidencia impugnada, los tribunales debemos sostener las determinaciones de hechos. *Íd.*

Respecto a la prueba testifical desfilada ante el foro administrativo, nuestro Tribunal Supremo ha zanjado que debemos *respetar el dictamen de dicho foro en cuanto a la credibilidad de los testigos. Otero v. Toyota*, supra, pág. 731. En la misma Opinión fuimos advertidos que **la misión de dirimir prueba conflictiva que plantee una controversia sobre credibilidad *no nos pertenece* como Tribunal de Apelaciones, sino que**

**ello recae en la agencia ante la cual se desfiló la prueba**. (Énfasis provisto). *Íd.*

Con todo, nuestro Tribunal Supremo también ha identificado unas circunstancias en que corresponde no observar la deferencia a las determinaciones administrativas. En específico, el alto foro ha reconocido que esta cederá cuando: (1) la decisión no está basada en evidencia sustancial; (2) el organismo administrativo ha errado en la aplicación de la ley, y (3) ha mediado una actuación irrazonable o ilegal. *Ofic. de Ética Gubernamental v. Martínez Giraud*, 210 DPR 79, 90 (2022); *Acarón, et al v. DRNA,* 186 DPR 564, 584 (2012)*; Costa Azul v. Comisión,* 170 DPR 847,852 (2007).

Finalmente, valga hacer breve mención de que, en *Vázquez v. Consejo de Titulares*, 2025 TSPR 56, nuestro Tribunal Supremo subrayó que los jueces tenemos un mandato legislativo de revisar las actuaciones administrativas, *el cual debemos cumplir cabalmente.* Luego de ello el mismo alto foro puntualizó que, aunque en reiteradas ocasiones había expresado que las conclusiones e interpretaciones de las agencias merecen gran consideración y respeto, y que su revisión judicial se limitaba a determinar si estas actuaron arbitraria o ilegalmente, no obstante, ***esto no equivale a una renuncia de nuestra función revisora***. En armonía con lo aseverado, el alto Foro concluyó que:

> ...la interpretación de la ley es una tarea que corresponde inherentemente a los tribunales. Así, enfatizamos la necesidad de que los foros judiciales, en el ejercicio de su función revisora, actúen con el rigor que prescribe la LPAU, *supra*. Como corolario, al enfrentarse a un recurso de revisión judicial proveniente de una agencia administrativa, será el deber de los tribunales revisar las conclusiones de derecho en todos sus aspectos. No guiados por la deferencia automática a la que alude el DACo, sino que por los mecanismos interpretativos propios del Poder Judicial. *Vázquez v. Consejo de Titulares*, supra.

### III. Aplicación del Derecho a los hechos

a.

Al argumentar sobre el primer señalamiento de error alzado, tanto en el *recurso de revisión administrativa* como en su *Alegato suplementario*, el Procurador inició resaltando aquella prueba testifical desfilada ante la CIPA que juzgó suficiente en derecho para establecer que el Agte. Gerena Batancourt incurrió en la conducta de violencia doméstica que dio lugar a la medida disciplinaria impuesta. Como resultado de tal ejercicio, al Procurador le resultó *evidente* que: el recurrido desplegó por varios años un comportamiento abusivo con quien sostenía una relación consensual, la Agte. Santana Ramos; que el hecho de que esta no acudiera a un hospital, o no se querellara antes sobre episodios de violencia doméstica, era irrelevante.

En resumidas cuentas, en su primer señalamiento de error el Procurador procura nuestra intervención con la valoración de la prueba testifical que desfiló ante la CIPA.

Sobre ello, ya habíamos anticipado que el alcance de nuestra labor revisora acerca de las determinaciones de hechos efectuadas por el foro administrativo es limitado, pues, por virtud expresa de ley, debemos sostenerlas *si se basan en evidencia sustancial que obra en el expediente administrativo.* Art. 4.5 de la LPAU, 3 LPRA sec. 9675; *Torres Rivera v. Policía de P.R.,* supra, 626-627. A lo que se añade que nuestro Tribunal Supremo ha sido enfático al dictar que *debemos respetar el dictamen del foro administrativo en cuanto a la credibilidad de los testigos*, perteneciendo a dicho foro, no al Tribunal de Apelaciones, *la misión de dirimir prueba conflictiva que plantee una controversia sobre credibilidad. Otero v. Toyota,* supra, pág. 731.

Lo cierto es que, al revisar las determinaciones de hechos alcanzadas por el foro recurrido, resalta que la *Resolución* recurrida fue

muy puntual al dejar rastro del ejercicio de credibilidad sobre la prueba testifical que llevó a cabo y lo condujo a la revocación de la sanción disciplinaria del recurrido. En este sentido, en la *Resolución* emitida se consignó: que los testimonios presentados por el NPPR **revelaron serias contradicciones**. Ejemplo de estas, según el testimonio del Sgto. Rodríguez Villafañe, **el contenido del mensaje enviado por el recurrido a la Agte. Santana Ramos** que dio inicio al proceso disciplinario, solo iba dirigido a solicitarle a esta que se fuera de la residencia **y no contenía lenguaje soez, hostil y ofensivo**. Además, este mismo testigo nunca observó a la Agte. Santana Ramos con rasgos de agresión o golpe alguno, a pesar de llevar años supervisándola. La Agte. Figueroa Soto testificó, por su parte, que conocía a la Agte. Santana Ramos por años y esta nunca le había hablado o mostrado indicios de violencia doméstica. Añadió, que fue quien tuvo a su cargo la presentación de la denuncia inicial **y en dicho documento solo se mencionó el mensaje sobre la salida de la casa, sin que allí se nombrara agresión o maltrato físico hacia la Agte. Santana Ramos**.

En lo referente al testimonio de la presunta agredida, la Agte. Santana Ramos, el foro recurrido llamó la atención a que: esta no pudo precisar datos específicos sobre los supuestos eventos de agresión; presentó la querella contra el recurrido el mismo día en que este le pidió que saliera de la casa que compartían; en la denuncia presentada no se dijo nada sobre haber sufrido maltrato físico. Señalado lo cual, la CIPA expresamente consignó que dicho testimonio no le mereció credibilidad.

Por nuestra parte, examinada la TPO, no apreciamos que su contenido sirva para ponernos en posición de revertir la apreciación de la prueba oral realizada por el foro administrativo. Afirmamos así, no solo porque, reiteramos, no nos corresponde la labor de dirimir contradicciones en la prueba testifical, *Otero v. Toyota,* supra, pág. 731, sino también

porque la lectura de los testimonios que surgen de la referida TPO sostienen las conclusiones alcanzadas por el foro administrador, según las hemos reproducidos en los párrafos que preceden. Con mayor precisión, no podemos tildar de *irrazonable* la conclusión administrativa a los fines de que la prueba testifical mostró serias contradicciones acerca de la alegada violencia doméstica sufrida por la Agte. Santa Ramos, y ello nos impide intercambiar el ejercicio valorativo de la prueba testifical realizado en la CIPA, por el nuestro. En este sentido, tal prueba testifical no hizo *evidente* el alegado comportamiento abusivo desplegado por el recurrido hacia la Agte. Santos Ramos *por años.* Contrario a lo afirmado por el Procurador, juzgamos que el hecho de que la perjudicada no aludiera a episodios de violencia doméstica en fechas anteriores **no fue el único elemento considerado para restarle credibilidad** a su versión de los hechos, sino que tal conclusión surgió al sopesar el conjunto de la evidencia testifical presentada, ejerciendo su función el foro recurrido de dirimir contradicciones encontradas en esta.

En definitiva, juzgamos que la apreciación de la prueba testifical que llevó a cabo el foro recurrido merece deferencia por nuestra parte, **no pudiendo atribuirle una actuación irrazonable en su ejercicio** que nos habilite para revocar la *Resolución* recurrida.

b.

Como segundo error se aduce que el foro administrativo incidió al aplicar estrictamente las Reglas de Evidencia, 32 LPRA Ap. VI, en la vista formal celebrada. En particular, se sostiene que se equivocó la CIPA al no admitir unas veintidós fotografías tomadas a la Agte. Santana Ramos, que evidenciaban los golpes que le propinó el recurrido, requiriéndose que fueran autenticadas de manera rigurosa, a pesar de que en la vista se propuso su autenticación a través del testimonio de la propia perjudicada.

Puestos a dirimir este señalamiento de error, observamos que las incidencias probatorias aludidas se encuentran enmarcadas en las páginas 25 a la 33 de la TPO, con referencia a la vista celebrada el 25 de mayo de 2023. En lo que concierne, en dichas páginas se revela que, mientras el NPPR conducía el examen directo de la Agte. Santana Ramos, se dispuso a presentar como evidencia las mencionadas veintidós fotografías que, alegadamente, se tomaron de las lesiones causadas por el recurrido. Ante ello, el recurrido presentó objeción, al juzgar que, antes de ser admitidas como evidencia, se necesitaba probar la cadena de custodia, y no se encontraba en sala algún funcionario para cumplir tal requerimiento. Opuso a ello el NPPR que la autenticación se daría a través del testimonio de la propia perjudicada, quien estaba allí siendo interrogada, para lo cual procedió a realizar las preguntas atinentes a ese propósito. Con todo, la CIPA determinó no admitir las referidas fotos, razonando que no se podía establecer su *cadena de evidencia*, al solo contar con la versión de la perjudicada.

En este asunto la CIPA incidió en varios frentes.

Primero, y cónsono con la sección 3.13(e) de la LPAU, 3 LPRA sec. 9653(e), **la no aplicabilidad** de las Reglas de Evidencia en los procesos administrativos *persigue que lo justo impere sin las trabas procesales de los tribunales de justicia y propiciar que éstos sean de carácter ágil y sencillo. Otero v. Toyota,* supra, pág. 734. Una sola lectura de las incidencias recogidas en las páginas de la TPO citadas evidencian en este asunto la aplicación en extremo rigurosa de las Reglas de Evidencia, que impuso trabas a la celeridad que debe primar en las vistas administrativas.

Aunque reconocemos que la Regla 3.13(c) de la LPAU faculta al funcionario que preside una vista *a excluir aquella evidencia que sea impertinente, inmaterial, repetitiva o inadmisible por fundamentos constitucionales o legales basados en privilegios evidenciarios reconocidos*

*por los tribunales de Puerto Rico*, 3 LPRA sec. 9653(e), en este caso no se daban ninguna de tales circunstancias. Muy al contrario, la prueba de las fotos que el NPPR se dispuso a presentar aparentaban ser pertinentes, en tanto podrían haber hecho más probable la declaración sobre presunta agresión del recurrido, no eran repetitivas, y mucho menos inadmisibles, como explicaremos en el próximo párrafo.

Manifestamos que la CIPA se equivocó en varios frentes porque, aunque se hubiesen aplicado rigurosamente las Reglas de Evidencia, tales fotos también habrían de ser admitidas, pues no precisaban el establecimiento de una *cadena de evidencia* al tratarse de evidencia demostrativa ilustrativa, utilizadas **con el propósito de corroborar el testimonio de la perjudicada**, (de aquí que se considere demostrativa *ilustrativa*, no *real*). Tal como lo sugirió el NPPR, para la autenticación de tales fotos bastaba con el testimonio de la Agte. Santana Ramos.

Sobre este tema evidenciario, en innumerables ocasiones nuestro Tribunal Supremo ha sostenido el inmenso valor probatorio de las fotografías, **para fines de ilustrar hechos esenciales <u>sobre lo declarado por los testigos</u>** – *Pueblo v. Rivera Nazario*, 141 DPR 865, 894 (1996); *In re Colton Fontán*, 128 DPR 1, 95 (1991); *Pueblo v. López Rodríguez*, 118 D.P.R. 515, 543 (1987); ***<u>para demostrar las lesiones producidas</u>*** -- *Pueblo v. Rivera Nazario*, supra; *In re Colton Fontán*, supra; *Pueblo v. Rodríguez Colón,* 95 D.P.R. 614, 617-618 (1967); *Pueblo v. Pacheco Stevenson,* 83 D.P.R. 842, 848 (1961). (Énfasis y subrayado provistos).

Al hablar de evidencia demostrativa se refiere a evidencia perceptible por los sentidos. E.L. Chiesa Aponte, *Tratado de Derecho Probatorio: Reglas de Evidencia de Puerto Rico y Federales*, República Dominicana, Ed. Corripio, 1998, T. II, págs. 1049-1056. Es decir, prueba de naturaleza tangible, visible o audible que transmite al juzgador de hechos una impresión de primera mano. Este tipo de evidencia demostrativa se

clasifica en "evidencia real" y **"evidencia ilustrativa"**. E.L. Chiesa, *Reglas de Evidencia de Puerto Rico 2009*, Estados Unidos de América, Publicaciones JTS, Ed. Luiggi Abraham, 2009, pág. 324.

El propósito de la ilustrativa es "únicamente para enseñar, instruir, representar o hacer más comprensible" el testimonio de un testigo mediante fotografías, videos, croquis, inspecciones oculares, entre otras. *Pueblo v. Nazario Hernández*, 138 DPR 760, 774 (1995). En el caso de la evidencia ilustrativa, *cuyo fin es ilustrar o clarificar un testimonio, como por ejemplo un croquis, un chart,* ***una fotografía, lo único que el proponente debe establecer es que tal evidencia es de ayuda al juzgador para entender otra evidencia, particularmente el testimonio de un testigo. En estos casos el origen de la evidencia ilustrativa tiene poca o ninguna importancia****. Lo mismo da que un testigo vaya a la pizarra y el mismo haga un dibujo que ilustre su testimonio o utilice un modelo, croquis, etc. preparado por él u otra persona.* ***Lo único importante es que el tribunal entienda que la evidencia ilustrativa hace más comprensible la otra evidencia****. (Énfasis suplido.) Íd.*, citando a E.L. Chiesa, *Práctica Procesal Puertorriqueña: Evidencia*, San Juan, Pubs. J.T.S., 1983, Vol. I, pág. 514.

**La autenticación es diferente cuando la evidencia demostrativa es real o ilustrativa**. Hay mucho más rigor en la evidencia real, pues hay que satisfacer [el requisito de] mismidad [establecido] en la Regla 901(A)". (Énfasis provisto). E.L. Chiesa, *Reglas de Evidencia de Puerto Rico 2009, op. cit.*, pág. 325.

Por otro lado, cuando las fotografías se utilizan como evidencia demostrativa ilustrativa, **no se requiere más autenticación que el testimonio del testigo en términos de que la fotografía representa adecuadamente la escena a la que se refiere su declaración**. (Énfasis

provisto). E. L. Chiesa, *Tratado de Derecho Probatorio (Reglas de Evidencia de Puerto Rico y Federales)*, Tomo II, Publicaciones JTS, pág. 1055 (2002).

En definitiva, de aplicar las Reglas de Evidencia a la vista administrativa realizada[5], (y en este caso, reiteramos, no se tenía que hacer), bastaba con el testimonio de la propia perjudicada para autenticar las fotos que el NPPR se dispuso a presentar como evidencia, sin necesidad de establecerse la cadena de evidencia, autenticación esta última que se aplica a la prueba demostrativa real.

Sin embargo, a pesar de que el señalamiento de error sí fue cometido, juzgamos que la admisión de las referidas fotografías no hubiese tenido un efecto sustancial o decisivo en la *Resolución* recurrida. Según explicamos, al sopesar la totalidad de la prueba testifical presentada por el NPPR, el foro administrativo consignó las incongruencias establecidas entre la teoría legal promovida por esta última parte, y el testimonio vertido por sus propios testigos. Sin necesidad de reiterar lo ya apuntado, el mensaje inicial mediante celular que dio lugar a la presentación de la querella contra el recurrido no contenía lenguaje soez, hostil y ofensivo; ninguno de los testigos (salvo la propia perjudicada) la observó con rasgos de agresión o golpe alguno; en la denuncia inicial presentada solo se mencionó el mensaje sobre el requerimiento de que esta saliera de la casa que compartía con el recurrido, sin que allí se nombrara agresión o maltrato físico en alguna fecha; coincidió la querella presentada, con la petición del recurrido de que la perjudicada abandonara la residencia que compartían. Las referidas fotografías tuvieron el propósito de corroborar un testimonio que, a fin de cuentas, no fue creído por el juzgador de los

---

[5] Es de ver que, de aplicar las Reglas de Evidencia al caso, tampoco cabría conceder que el NPPR cumpliera con las Reglas 104 a la 106, 32 LPRA Ap. VI, pues no medió un ofrecimiento de la prueba, ni tampoco se discutió que la exclusión de dicha prueba fuera un factor decisivo, sustancial o mediara error extraordinario en la determinación emitida.

hechos, apreciación de la prueba en la que no estamos en posición de intervenir.

## IV. Parte dispositiva

Por los fundamentos que anteceden, se *confirma* la *Resolución* recurrida.

Lo acordó y manda el Tribunal y lo certifica su Secretaria.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones